**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

IN THE MATTER OF THE
ADMINSTRATIVE INSPECTION OF:                    23-MJ-104

STAINLESS FOUNDRY & ENGINEERING, INC.
5150 NORTH 35th STREET
MILWAUKEE, WISCONSIN

---

*EX PARTE* **APPLICATION FOR ADMINISTRATIVE WARRANT
UNDER THE RESOURCE CONSERVATION AND RECOVERY ACT**

---

TO:    U.S. Magistrate Judge William E. Duffin
       United States District Court
       Eastern District of Wisconsin

### Introduction

The Regional Administrator of the United States Environmental Protection Agency

("U.S. EPA," "EPA" or "the Agency"), Region 5, by and through the United States Attorney for

the Eastern District of Wisconsin, hereby applies for an administrative warrant to allow her

authorized representatives to enter, inspect, and take samples from the property owned and/or

controlled by Stainless Foundry & Engineering, Inc. ("SF&E"), located at 5150 N. 35th Street,

Milwaukee, Milwaukee County, Wisconsin. The inspection is to be conducted under the

authority of Section 3007(a) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C.

§ 6927(a), and the standards for such warrants established by the decisions in *Marshall v.

Barlow's, Inc.*, 436 U.S. 307 (1978), and *National Standard Co. v. Adamkus*, 881 F.2d 352 (7th

Cir. 1989).

The United States seeks an administrative warrant to grant representatives of U.S. EPA

access to the SF&E facility for the purposes of conducting a compliance-evaluation inspection

under RCRA and collecting samples of suspected hazardous wastes (specifically "Kolene sludge" waste, waste from a filter press that collects solids from rinse water used in SF&E's Kolene process, and waste in the form of dust from the facility's pollution-control equipment, known as baghouses). The inspection and sampling of the Kolene sludge and associated filter press waste are needed to determine whether SF&E (a large quantity generator of hazardous waste) has accumulated hazardous wastes in excess of the time-limits established under RCRA regulations for generators of hazardous waste, as suspected by representatives of the Wisconsin Department of Natural Resources. The sampling of the baghouse dust is necessary to determine whether the dust accumulating in one or more baghouses is hazardous waste, and whether such wastes generated at the SF&E facility are being handled in compliance with the requirements of RCRA. In addition, the sampling is needed to determine whether there is contamination from the suspected hazardous wastes in the surface and subsurface soils of the facility.

## Statutory and Regulatory Background

RCRA is a comprehensive environmental statute that requires and authorizes U.S. EPA to regulate hazardous wastes. RCRA authorized the EPA to regulate the generation, transport, storage, treatment and disposal of hazardous wastes in order to minimize the waste generated and the harm done by that waste. 42 U.S.C. § 6901 *et seq. See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996); *and Chicago v. Environmental Defense Fund*, 511 U.S. 328, 331–332, 114 S.Ct. 1588, 1589–1590, 128 L.Ed.2d 302 (1994). To fulfill the objectives of RCRA, Congress directed the EPA to enact regulations establishing standards applicable to generators and transporters of hazardous waste, and to enact regulations establishing performance standards applicable to owners and operators of facilities that treat, store or dispose of hazardous waste. *See* 42 U.S.C. §§ 6912(a) &(b), 6922, 6923 and 6924.

State Hazardous Waste Programs Authorized under RCRA

RCRA directs the EPA to authorize states to enforce their own hazardous waste programs in lieu of the EPA's basic federal program, but only if the state programs are "equivalent to" and "consistent with" the baseline federal program. The effect of the statute is that there is federal enforcement (civil and criminal) of state rules that are part of federally-authorized state hazardous waste regulatory programs under RCRA. 42 U.S.C. § 6926(b). *See United States v. MacDonald & Watson Waste Oil Co.*, 933 F.2d 35, 44 (1st Cir. 1991).[1]

As noted above, in order to receive authorization to administer a RCRA hazardous waste program, a state government must demonstrate that its hazardous waste regulatory program is at least equivalent to the EPA's federal regulatory program, that the State's hazardous waste program is consistent with the EPA's federal program or the authorized hazardous waste programs in other States, and that the State's hazardous waste program provides adequate enforcement of the requirements of the RCRA statute. 42 U.S.C. § 6926(a) & (b). Also as noted above, in a state with an EPA-authorized hazardous waste program, EPA retains its authority to enforce the requirements of RCRA and the hazardous waste regulations in such states. 42 U.S.C. § 6928(a)(2). In *MacDonald & Watson Waste Oil Co.*, the First Circuit Court of Appeals rejected a defense argument that Rhode Island's authorized state hazardous waste program had displaced the federal RCRA program; the court stated in relevant part that:

---

[1] *See also United States v. Richter*, 796 F.3d 1173, at 1183 (10th Cir. 2015) ("federal law sets a floor for state hazardous waste programs, and the Administrator can authorize a state program only if it is both "consistent with" and "equivalent to" the federal program. ... Thus, although states are free to impose requirements that "are more stringent than those imposed by" RCRA and its regulations, they may not impose standards less stringent than those federal standards."); *Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, at 1178-79 (5th Cir. 1986) ("[a]lthough Puerto Rico operates its own Phase I [hazardous waste regulatory] program, § 3008 of the RCRA, 42 U.S.C. § 6928, authorizes the EPA to enforce the provisions of Puerto Rico's program.").

The language of the challenged federal criminal provision, 42 U.S.C. § 6928(d), does not limit prosecutions thereunder to those who deal with facilities lacking a federal permit. The statute criminalizes '[a]ny person' who acts without ... 'a permit under this subchapter.' A permit under this subchapter is one issued by the Administrator of the EPA or by an authorized state. 42 U.S.C. § 6925. ... That [42 U.S.C.] § 6928(d), and companion federal criminal provisions, are meant to apply within states having authorized programs is amply supported by the legislative history.").

933 F.2d at 44-45.[2]

EPA has authorized the Wisconsin Department of Natural Resources (WDNR) to administer a state hazardous waste program in lieu of the federal government's base RCRA program in the State of Wisconsin. 40 C.F.R. § 272.2500 *et seq.*; *see 51 Fed. Reg. 3783* (January 31, 1986) (original authorization of Wisconsin hazardous waste regulatory program); *54 Fed. Reg. 22278* (June 6, 1989) (amended authorization); *54 Fed. Reg. 48243* (November 22, 1989) (amended authorization); *57 Fed. Reg. 15029* (April 24, 1992) (amended authorization); *58 Fed. Reg. 31344* (June 2, 1993) (amended authorization); *59 Fed. Reg. 39971* (October 4, 1994) (amended authorization); *64 Fed. Reg. 42630* (August 5, 1999) (amended authorization); *67 Fed. Reg. 43027* (June 26, 2002) (amended authorization); *74 Fed. Reg. 17423* (April 15, 2009) (amended authorization); *74 Fed. Reg. 17785* (April 17, 2009) (amended authorization); *76 Fed. Reg. 26616* (May 9, 2011) (authorized regulations incorporation by reference into federal rule). Therefore, the WDNR primarily is responsible for implementing and administering the

---

[2] *See also United States v. Elias*, 269 F.3d 1003, at 1012 (9th Cir. 2001) (rejecting argument that, pursuant to § 6926, Idaho's authorized hazardous waste program displaced the federal program, leaving no federal crimes and ousting the federal court of jurisdiction, and holding that, "under RCRA, the federal government retains both its criminal and its civil enforcement powers ... even where a state law counterpart exists, for many of these "counterparts" provide only misdemeanor punishments where federal law prescribes a felony," and concluding that "RCRA only contemplates that the federal permitting scheme is supplanted by authorized state ones."); *and Richter*, 796 F.3d at 1183 (10th Cir. 2015) ("When a state program is authorized under RCRA, federal regulations are displaced or supplanted by state regulations. ... But EPA retains the power under RCRA to pursue civil and criminal remedies for violations of the state program.").

hazardous waste regulatory program in the State of Wisconsin, and the WDNR issues and enforces RCRA permits for the treatment, storage or disposal of hazardous waste in Wisconsin, although, as explained above, U.S. EPA retains the authority to enforce the requirements of Wisconsin's federally-authorized hazardous waste regulations as federal law.[3]

Hazardous Waste – Definition, Rules Applicable to Generators

Under federal and authorized State regulations, a solid waste is considered to be a hazardous waste if it exhibits any of the following hazardous characteristics: ignitability, corrosivity, reactivity or toxicity. 40 C.F.R. § 261.20; Wisconsin Administrative Code (Wis. Adm. Code) NR § 661.0003(1). Among the substances that can make a solid waste a hazardous waste because of the toxicity characteristic is chromium. If, when tested using the Toxicity Characteristic Leaching Procedure analytical method, an extract from a representative sample of the solid waste is found to contain chromium at a concentration of five milligrams per liter (5.0 mg/L) or greater, the solid waste exhibits the hazardous characteristic of toxicity, and will be considered to be a hazardous waste. 40 C.F.R. § 261.24; Wis. Adm. Code NR § 661.0024. Once a solid waste has been identified as a hazardous waste, it is subject to RCRA and the federal or federally-authorized hazardous waste regulations promulgated under RCRA. Hazardous wastes may be stored or disposed of only at facilities that have a RCRA permit. 42 U.S.C. §§ 6925 and 6926.

Under the authority of RCRA, EPA has promulgated regulations, codified at 40 C.F.R. Parts 260 through 279, governing generators and transporters of hazardous waste and facilities that treat, store, and dispose of hazardous waste, pursuant to Sections 3001 – 3007, and 3013,

---

[3] The EPA-authorized Wisconsin hazardous waste regulations are codified in State regulations at Wisconsin Administrative Code (WAC) Chapter NR 600 – 690 (July 2017 version – the last version approved by EPA as part of Wisconsin's authorized hazardous waste program). *See* 40 C.F.R. § 272.2501(c)(4).

among others, of RCRA, 42 U.S.C. §§ 6921 – 6927, and 6934. As part of its EPA-authorized

hazardous waste program, the State of Wisconsin has promulgated regulations that impose

several requirements on generators of hazardous waste for the characterization, accumulation,

handling, transport and disposal of hazardous waste. For example, the regulation at Wis. Adm.

Code NR § 662.011 (40 C.F.R. § 262.11) requires that any person who generates a solid waste

must determine if that waste is a hazardous waste using the following method: (1) the person

may determine if the waste is excluded from regulation; (2) the person then shall determine if the

waste is listed as a hazardous waste in Wis. Adm. Code subch. D of ch. NR § 661 (lists of

hazardous wastes); (3) if the waste is not listed, the person shall determine any characteristics of

the waste per Wis. Adm. Code subch. C of ch. NR § 661 (characteristics of hazardous wastes);

and (4) if the waste is determined to be hazardous, the person generating the waste shall

determine any additional restrictions or exclusions pertaining to management of the waste. In

addition, Wis. Adm. Code NR § 662.020 requires that a generator of hazardous waste who

transports, or offers for transport, a hazardous waste for off–site treatment, storage or disposal

shall prepare a manifest, and shall designate on the manifest one facility which is licensed or

permitted to handle the waste described on the manifest. Wis. Adm. Code NR §§ 662.030,

662.031 and 662.032 impose packaging, labeling and marking requirements for hazardous waste

offered for off-site shipment.

Furthermore, under Wis. Admin. Code NR § 662.034(1) - (3) (40 C.F.R. § 262.34(a)),

and subject to certain exceptions, a generator of hazardous waste may accumulate hazardous

waste on-site for 90 days or less without having a permit or interim status, provided that the

generator complies with all applicable conditions set forth in Wis. Adm. Code NR § 662.034(1) -

(3) (40 C.F.R.§ 262.34(a)). A large quantity generator of hazardous waste who accumulates

hazardous waste for more than 90 days is an operator of a hazardous waste storage facility, and is subject to the requirements of Wis. Adm. Code ch. NR § 670, unless the generator has been granted an extension to the 90-day period. Storage of hazardous waste for more than 90 days subjects the generator to the requirement to obtain a hazardous waste license (permit), or to achieve interim status. Wis. Admin. Code NR § 662.034(2).

Any violation of regulations promulgated pursuant to Subtitle C of RCRA (Sections 3001-3023 of RCRA, 42 U.S.C. §§ 6921-6939e) or any state regulatory provision authorized pursuant to Section 3006 of RCRA constitutes a violation of RCRA, subject to the assessment of civil penalties and issuance of compliance orders as provided in Section 3008 of RCRA, 42 U.S.C. § 6928.

### Factual Background

SF&E owns and operates a stainless steel and metals foundry that accepts metals and pours them into sand and ceramic molds. SF&E manufactures parts for several different categories of industry, including the petroleum, chemical, military, pharmaceutical and nuclear industries. During facility operations, molten metal is poured into the sand or ceramic molds, and metal parts are later subjected to grinding and blasting operations. After being removed from the molds, parts are cleaned in a furnace which uses a heated liquid product known as "Kolene" to remove ceramic material from castings (by soaking the parts in a molten sodium hydroxide bath). Castings are then rinsed in a stagnant rinse bath. *Affidavit of Brenda Whitney, Par. 21.*

The SF&E facility generates different wastes. Sludge from the Kolene furnace is disposed of as hazardous waste (Hazardous Waste Code D007). Solids collected from rinse water used in the Kolene process are mixed with the Kolene sludge and disposed of as hazardous waste. Spent sand from the sand molds is discarded as non-hazardous waste. In addition,

baghouses used as air pollution control equipment for the grinding and blasting operations

generate (collect) waste in the form of baghouse dust. *Affidavit of Brenda Whitney, Par. 21*.

On or about March 10, 2022, the WDNR's civil enforcement office referred to U.S. EPA,

Region 5's Enforcement and Compliance Assurance Division (ECAD) a set of alleged violations

which the WDNR believed were committed at the SF&E facility. On or about May 5, 2022,

ECAD issued a Request for Information via email to Jim Stachowiak, President of SF&E, under

the authority of Section 3007 of RCRA, 42 U.S.C. § 6927. Among the inquiries made in this

Request for Information was a request that SF&E "Provide brief descriptions of the operations,

including on-site manufacturing/production, on-site industrial cleaning and maintenance

processes, the generation of any solid and/or hazardous wastes, any waste streams that are

diluted with water or other substance, waste streams that are mixed with other waste streams,

methods of waste analysis, on-site waste management practices." *See Affidavit of Brenda

Whitney, Par. 20*.

SF&E submitted a partial response to U.S. EPA's Request for Information on or about

July 8, 2022. Among other statements, SF&E represented in its response that "SFE [*sic*] is a sand

and investment casting foundry serving a wide variety of industries. Operations consist of the

following: ... Furnaces for melting steel." *Affidavit of Brenda Whitney, Par. 21*. The company

also stated that "[s]olid wastes generated at SFE [*sic*] include the following: ... Dust collector

wastes: There are several dust collectors which collect particulate from a number of sources

generating particulate emissions including grinding, blasting, cut-off saws, and welding."

*Affidavit of Brenda Whitney, Par. 21*. SF&E also represented that its operations consisted of the

following:

- Furnaces for melting steel.
- Pattern, core, and mold making operations (sand and investment castings).

8

- Pouring (casting) operations.
- A kolene furnace for cleaning castings by removing internal ceramic material in liquid sodium hydroxide.

- Grinding and blasting operations.
- Welding for both production and maintenance purposes.

*Affidavit of Brenda Whitney, Par. 21.*

SF&E described how it generated the Kolene sludge (which it identified as a hazardous waste falling under waste code D007 – hazardous characteristic of chromium toxicity[4]) as follows: "As described above, the Kolene furnace is used to remove ceramic material from castings by soaking them in a molten sodium hydroxide bath. Castings are then rinsed in a stagnant rinse bath. The rinse water is sent through an indexing fabric filter where solids are removed prior to discharge to the sanitary sewer in accordance with SFE's industrial wastewater discharge permit issued by the Milwaukee Metropolitan Sewerage District (MMSD). The Kolene furnace is periodically cleaned out and the resulting solid/sludge material is placed in a supersack for off-site disposal. The fabric filter media and associated solids from the rinse water are also placed in the supersack with the sludge." *Affidavit of Brenda Whitney, Par. 21.* The company described the generation of baghouse dust as follows: "Dust collector wastes: There are several dust collectors which collect particulate from a number of sources generating particulate emissions including grinding, blasting, cut-off saws, and welding." *Affidavit of Brenda Whitney, Par. 21.*

In addition, Appendix A to SF&E's initial response, entitled "Waste Matrix and Waste Determination Documentation," described one waste generated at the facility as "Dust/particulate collected by dust collectors." This waste was identified as "Non-Hazardous"

---

[4] See 40 C.F.R. § 261.24 (Toxicity Characteristic), Table 1; Wis. Adm. Code NR § 661.24 (Toxicity characteristic), Table 2.

waste which the facility operators managed in "dust collector receptacles" and "transferred to sand lugger." Furthermore, a diagram in Attachment A1 to SF&E's response depicts "particulate emissions" from grinding and cutting operations going to a "dust collector" for eventual disposal. *Affidavit of Brenda Whitney, Par. 21.*

WDNR's criminal investigative office conducted a lengthy investigation of SF&E before ultimately referring the entire matter to U.S. EPA, Region 5, for a possible federal civil enforcement action. The lead WDNR criminal investigator, Investigative Warden Michael Dieckhoff, provided EPA with information suggesting that the operators of SF&E have manipulated sampling of the baghouse dust in order to conceal the fact that the baghouse dust is a hazardous waste (under the toxicity characteristic for chromium, 40 C.F.R. § 261.24 and/or Wis. Adm. Code § NR 661.24), and have transported the baghouse dust without a hazardous waste manifest to a landfill that is not permitted/licensed to receive, store or dispose of hazardous waste. More specifically, on or about December 21, 2022, WDNR Investigative Warden Dieckhoff spoke with the Region 5 civil enforcement team. During that conversation, Warden Dieckhoff advised the EPA representatives that he had conducted several witness interviews of former SF&E employees, at least two of whom alleged that the persons in charge of operating the SF&E facility had mischaracterized one of the wastes generated by the facility – specifically, the baghouse dust – as non-hazardous waste, when in fact this waste was a hazardous waste; and that the operators of the facility had directed employees to ship this baghouse dust offsite for disposal as non-hazardous waste. Later, in January 2023, Warden Dieckhoff delivered to ECAD Enforcement Officer / Environmental Engineer Brenda Whitney electronic copies of numerous interview reports, WDNR inspection reports, digital photographs and other records pertaining to his investigation of SF&E. *Affidavit of Brenda Whitney, Par. 22-23.*

Potential civil violations which U.S. EPA may pursue include failure to properly characterize waste, in violation of the federally-authorized state hazardous waste regulation at Wis. Adm. Code § NR 662.011 (40 C.F.R. § 262.11); and transportation of hazardous waste without a manifest, in violation of Wis. Adm. Code NR 662.020 (40 C.F.R. § 262.20). In addition, SF&E may have accumulated hazardous waste in excess of 90 days, and therefore may have been an operator of a hazardous waste storage facility without the required license (permit). See Wis. Adm. Code NR § 662.034 ("A generator who accumulates hazardous waste for more than 90 days is an operator of a storage facility and is subject to the requirements of chs. NR 664 and 665 and the license requirements of ch. NR 670 unless the generator has been granted an extension to the 90−day period").

### Warrant Application - Discussion

U.S. EPA is conducting an investigation of the generation, handling, accumulation, offsite shipment and disposal of hazardous wastes at the "SF&E" facility in Milwaukee, Wisconsin. As explained in the attached sworn Affidavit of U.S. EPA Environmental Engineer Brenda Whitney, the Agency has reason to believe that the owners or operators of SF&E have mis-characterized dust generated by the facility's baghouse air pollution control equipment as a non-hazardous waste, when in fact this baghouse dust is hazardous due to the toxicity characteristic for chromium under Wis. Adm. Code NR § 661.24, and Table 2 (40 C.F.R. § 261.24, and Table 1). As detailed in Ms. Whitney's Affidavit, interviews of two former SF&E employees by a Warden Michael Dieckhoff of the WDNR provide information that the baghouse dust is a hazardous waste due to the presence of chromium, and that this hazardous waste has been characterized incorrectly as non-hazardous and shipped offsite to a municipal landfill which cannot legally accept hazardous wastes. *Affidavit of Brenda Whitney, Par. 24-27.*

U.S. EPA wishes to inspect the SF&E facility and collect samples of the baghouse dust for laboratory analysis in accordance with the federal hazardous waste regulations to determine whether the dust is a hazardous waste which should be managed as a hazardous waste under RCRA and the statute's implementing regulations. The Agency also wishes to collect samples of the Kolene sludge and filter press waste, and to perform a visual and records inspection, in order to determine whether those wastes are hazardous, and whether SF&E is handling those wastes in compliance with RCRA.

Legal Authorities

Section 3007(a) of RCRA, 42 U.S.C. § 6927(a), specifically authorizes the type of inspection and sample-collection activities contemplated by U.S. EPA for the SF&E facility. RCRA Section 3007(a) provides, in relevant part, as follows:

> For purposes of … enforcing the provisions of [RCRA], <u>any person who generates, stores, treats, transports, disposes of, or otherwise handles or has handled hazardous wastes shall</u>, upon request of an officer, employee or representative of the Environmental Protection Agency, duly designated by the Administrator, or upon request of any duly designated officer, employee or representative of a State having an authorized hazardous waste program, <u>furnish information relating to such wastes and permit such person at all reasonable times to have access to, and to copy all records relating to such wastes</u>. For the purposes of . . . enforcing the provisions of [RCRA], such <u>officers, employees or representatives [of EPA or an authorized State] are authorized</u> (1) <u>to enter at reasonable times any establishment or other place where hazardous wastes are or have been generated, stored, treated, disposed of, or transported from;</u> and (2) <u>to inspect and obtain samples from any person of any such wastes and samples of any containers or labeling for such wastes.</u>

42 U.S.C. § 6927(a) (emphasis added). Therefore, U.S. EPA is seeking an administrative warrant in order to perform the inspection and sampling of baghouse dust, Kolene sludge and filter press waste at the SF&E facility.

A warrant generally is required for non-consensual inspections. In *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978), the Supreme Court held that similar OSHA legislation granting OSHA

inspectors a right of entry did not, absent consent, obviate the need for a warrant. Despite this warrant requirement, however, the law is clear that a warrant for an administrative inspection is based on standards less stringent than the "probable cause" required for search warrants in criminal cases. As the Court stated in *Barlow's, supra*:

> Whether the Secretary [of Labor] proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court*, 387 U.S., at 538.

436 U.S. at 320-321. *Accord, Delaware v. Prouse*, 440 U.S. 648 (1970).

As noted above, Section 3007 of RCRA, 42 U.S.C. § 6927, authorizes U.S. EPA "to enter any establishment or other place where hazardous wastes are or have been generated, stored, treated, disposed of or transported from," and to "inspect and obtain samples from any person of any such wastes and samples of any container or labeling for such wastes," for the purpose of enforcing the provisions of RCRA. Federal courts have held that a federal regulatory agency is authorized to apply for a warrant to execute such a statutory grant of inspection authority. *Marshall v. Barlow's*, Inc., 436 U.S. at 325 & n. 23 (holding warrantless inspections under the Occupational Safety and Health Act to be unconstitutional, but concluding that "there would be no occasion for enjoining the inspections authorized" by the statute if the agency obtained a warrant satisfying the Fourth Amendment). While the RCRA statute does not include language specifically stating that U.S. EPA may apply for a warrant to compel access to a facility for purposes of an inspection, federal courts have held that such express statutory authorization is not necessary before a warrant may be issued. *See Blackie's House of Beef, Inc. v. Castillo*, 659

F.2d 1211, 1222 (D.C. Cir.1981) (inferring "from the provisions of the Immigration and

Nationality Act some predicate power to obtain search warrants in aid of the enforcement

activities specifically delineated in the statute, although the statute does not explicitly authorize

such warrants"); *Bunker Hill Co. Lead & Zinc Smelter v. EPA*, 658 F.2d 1280, 1285 (9th Cir.

1981) (holding that the Clean Air Act's grant of the power of entry for inspection provided

"sufficient authority to justify obtaining inspection warrants"); *Midwest Growers Coop. Corp. v.

Kirkemo*, 533 F.2d 455, 462 (9th Cir. 1976) (holding that "non-consensual administrative

searches may be accomplished through warrants of inspection when the administrative agency is

granted by Congress the power of entry to make its inspections"); *United States v. M/V

Sanctuary*, 540 F.3d 295, at 299-300 (4th Cir. 2008) (rejecting argument that U.S. EPA lacked

authority to apply for a warrant because the statute at issue (the Toxic Substances Control Act)

did not specifically confer such authority on the Agency, and holding that, when Congress has

provided an agency with enforcement and investigatory authority, it is not necessary for

Congress to identify explicitly each and every technique that may be used in executing the

statutory mission; instead, regulatory or enforcement authority generally carries with it all the

modes of inquiry and investigation traditionally employed or useful to execute the authority

granted, including administrative warrants to execute a statutory grant of inspection authority);

*In re Yoder's Slaughterhouse Site*, 519 F.Supp.2d 574, 579 (D. Md. 2007) (holding that

provisions of the Comprehensive Environmental Response, Compensation, and Liability Act

authorizing entry, inspection and sampling imply a warrant authority that is "as broad as

necessary to enable the EPA to enter and perform the statutory mission"); *and Boliden Metech,

Inc. v. United States*, 695 F.Supp. 77, 80–82 (D. R.I. 1988) (holding that the authority to seek

and obtain a warrant follows from the Toxic Substances Control Act's grant of entry and inspection authority).

The Seventh Circuit Court of Appeals has recognized U.S. EPA's broad authority under RCRA to conduct the type of inspection and sampling which the Agency intends to perform at the SF&E facility. In *National Standard Co. v. Adamkus*, 881 F.2d 352 (7th Cir. 1989), the Seventh Circuit upheld the lower court's decision to grant U.S. EPA an administrative search warrant compelling access to a facility for purposes of conducting a RCRA compliance-inspection. The Seventh Circuit rejected the defendant's argument that Section 3007 of RCRA only permits inspections by U.S. EPA when a particular facility "identifies itself as possessing hazardous wastes," explaining that:

> We cannot accept such an interpretation of section 6927(a). We agree with the district court that this interpretation would "emasculate EPA's ability to pursue the broad remedial goals of RCRA." Mem. op. at 22. Like the district court, we believe that "[t]he main purpose of an inspection and sampling visit is to detect the presence of hazardous wastes. If EPA could not inspect an area unless it knew hazardous wastes were stored there, EPA would be rendered effectively powerless." *Id.* EPA's broad inspection authority is tempered by its need to show probable cause and obtain an administrative search warrant, discussed *infra*, when a hazardous waste facility owner, such as National–Standard, does not consent to the inspection.

*National Standard Co.*, 881 F.2d at 360. The court noted that "EPA's inspection and sampling authority derives from the broad language in [RCRA] section 6927(a), which empowers the agency to enforce the entire RCRA scheme, not just a particular provision." 881 F.2d at 360.

A. Standard for Issuance of Administrative Warrant

The court in *National Standard Co.* reiterated the two standards articulated by the United States Supreme Court for issuance of administrative warrants to compel entry by the government for purposes of conducting an inspection. As the Seventh Circuit explained, for an administrative warrant to be issued, the government must first demonstrate either (1) that there is "specific

evidence of an existing violation," or (2) that the search requested in the warrant application "is part of a general neutral administrative plan." *National Standard Co.*, 881 F.2d at 361, *citing Marshall v. Barlow's, Inc.*, 436 U.S. at 320–21, 98 S.Ct. at 1824–25, 56 L.Ed.2d 305 (1978). Satisfaction of either of these conditions constitutes administrative probable cause. *In the Matter of Establishment Inspection of Gilbert & Benneth Mfg. Co.*, 589 F.2d 1335, at 1338 (7th Cir.1979), cert. denied, 444 U.S. 884 (1979). Either showing is sufficient to ensure that "[t]he decision to enter and inspect ... [is not] the product of the unreviewed discretion of the enforcement officer in the field." *See v. City of Seattle*, 387 U.S. 541 (1967).

Consistent with the decisions of the Supreme Court and other federal courts, the *National Standard Co.* court also noted that "administrative warrants do not require the same degree of probable cause as do criminal warrants." 881 F.2d at 361. *See Camara v. Municipal Court*, 387 U.S. 523, 538-39, 87 S.Ct. 1727, 1735-36, 18 L.Ed.2d 930 (1967), and *See v. City of Seattle*, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967). The *National Standard Co.* court further explained that an affidavit which identifies specific conditions and complaints indicative of one or more violations would contain sufficient specificity to support issuance of a warrant. 881 F.2d at 361. Other courts have ruled in similar fashion. In *West Point Pepperell Inc., v. Donovan*, 689 F. 2d 950, 958 (11th Cir. 1982), the Eleventh Circuit stated:

> [T]he evidence of a specific violation required to establish administrative probable cause, while less than that needed to show a probability of violation, must at least show that the *proposed inspection is based upon a reasonable belief that a violation has been or is being committed* and not upon a desire to harass the target of the inspection. This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation [*Emphasis added*].

*See also Burkart Randall Division of Textron, Inc., v. Marshall*, 625 F.2d 1313, at 1317, 1318-20 (7th Cir. 1980) (holding that warrants to inspect may be issued on showing of "administrative

probable cause" rather than the more stringent standard of criminal probable cause). Thus, the standard that must be met to demonstrate sufficient probable cause to support an administrative warrant is less stringent than the standard for criminal search warrants.[5]

After a showing of a reasonable suspicion that a violation of an environmental statute has been made, a warrant may thereupon be issued *ex parte* to enforce the U.S. EPA's statutory right of entry. *See National Standard Co.*, 881 F.2d at 363 (7th Cir. 1989); *Bunker Hill Co.*, 658 F.2d at 1285 (9th Cir. 1981). Advance notice is not required prior to the issuance of a warrant, because such notice would encourage an owner or operator to attempt to intervene in the *ex parte* proceeding. *In the Matter of ALAMEDA COUNTY ASSESSOR'S PARCEL NOS. 537 801 2 4 AND 537 850 9, et al.*, 672 F. Supp. 1278, at 1287 (N.D. CA 1987); *see also National Standard Co.*, 881 F.2d at 362 ("*ex parte* warrants are the normal means by which warrants are obtained"). Additionally, the Seventh Circuit has recognized that the Administrator of EPA is allowed to sample and monitor at reasonable times to assure compliance with environmental statutes. *See*

---

[5] At least one court has stated that specific evidence of violations must reveal "some plausible basis for believing that a violation is likely to be found." *Marshall v. Horn Seed Co., Inc.*, 647 F.2d 96, 102 (10th Cir. 1981). In the *Horn Seed Co.* case, the Tenth Circuit found probable cause lacking where an OSHA inspector's affidavit had simply stated that a complaint about unsafe conditions had been received and then described the conditions alleged to be unsafe, without identifying or describing the person who had made the complaint or explaining how that person was in a position to observe the allegedly unsafe conditions. 647 F.2d at 103. However, the Tenth Circuit noted that, "to issue a[n administrative] warrant, the magistrate need not have a reasonable belief that a violation will be found[,]" "[n]or need he even find it more probable than not that a violation will be uncovered." 647 F.2d at 102. Otherwise, "the compelling public interest in preventing or speedily abating hazardous conditions, which interest demands relaxation of the traditional probable cause test for administrative inspections ... would not be served." *Id.* The court explained that, to satisfy the lesser probable cause standard for administrative warrants, "there must be some basis for believing that a complaint was actually made, that the complainant was sincere in his assertion that a violation exists, and that he had some plausible basis for entering a complaint." 647 F.2d at 102-103. The court also explained that, "a 'substantial basis' is not required to credit the information's reliability." *Id.* In the instant matter, the statements in the Affidavit of U.S. EPA Environmental Engineer Brenda Whitney satisfy the standard for probable cause articulated by the Tenth Circuit in *Horn Seed Co.*, as the Affidavit reveals that the allegations forming the basis of the suspected violations were made by two former SF&E employees whose job duties and experience placed them in a position to witness the actions comprising the violative conduct.

*Mobil Oil Corporation v. United States Environmental Protection Agency*, 716 F.2d 1187 (7th

Cir. 1983). Therefore, prior notification to the owner or operator of U.S. EPA's *ex parte*

application for a warrant is not required. *See Stoddard Lumber Co. v. Marshall*, 627 F.2d 984, at

990 (9th Cir. 1980); *and Bunker Hill Co.*, 658 F.2d at 1285.

In the instant matter, the requested warrant is appropriate under the first standard of

"specific evidence of an existing violation." As the attached Affidavit of Environmental Engineer

Brenda Whitney illustrates, U.S. EPA has a reasonable suspicion that SF&E has committed

violations of regulatory standards applicable to generators of hazardous waste, 42 U.S.C. § 6922;

violations of regulatory standards applicable to owners and operators of hazardous waste

treatment, storage and disposal facilities, 42 U.S.C. § 6924; and regulatory standards developed

pursuant to Section 3005 of the RCRA (permits for treatment, storage or disposal of hazardous

waste), 42 U.S.C. § 6925. The Affidavit identifies the two former SF&E employees who have

alleged that SF&E mischaracterized the baghouse dust as non-hazardous waste, and the Affidavit

describes how those employees were in a position to know the facts forming the basis of the

suspected violations of RCRA. More specifically, the Affidavit of U.S. EPA Environmental

Engineer Brenda Whitney quotes extensively from reports of interview of a former SF&E

employee who described how it was widely known within SF&E that the baghouse dust generated

by at least one of the grinding booths at the facility was a hazardous waste due to the levels of

chromium in the dust. *Affidavit of Brenda Whitney*, at Par. 24.b. and 24.c.; Par. 25.k. These

interview reports (as summarized by Ms. Whitney's Affidavit) contain specific details about how

a former environmental, health and safety manager had intentionally mischaracterized a sample

taken from non-hazardous waste as a sample of the baghouse dust, in order to conceal the fact that

the baghouse dust was hazardous due to the hazardous characteristic of chromium toxicity.

*Affidavit of Brenda Whitney*, at Par. 25.c. – 25.m. Another former SF&E employee described how the baghouses were often in a state of disrepair, which could have resulted in baghouse dust contaminating both the interior and outdoor areas of the facility (and contaminating the soil). *Affidavit of Brenda Whitney*, at Par. 26.b. – 26.f. Therefore, based on the reports of interview of the two former SF&E employees, U.S. EPA has reason to believe that SF&E failed to properly characterize certain solid wastes generated at the SF&E facility (specifically, baghouse dust from the facility's air pollution control equipment) as RCRA hazardous wastes and failed to manage such wastes as such as required by Section 3002 of the RCRA and the implementing regulations at 40 C.F.R. Part 262. U.S. EPA also has reason to believe that SF&E may have: (1) stored and/or treated[6] hazardous waste (including baghouse dust) without a hazardous waste permit, in violation of Section 3005 of RCRA; and (2) violated the standards for management of hazardous waste at 40 C.F.R. Part 265 promulgated under Section 3004 of the RCRA.

In *M/V Sanctuary*, 540 F.3d 295, the Court of Appeals for the Fourth Circuit upheld a finding of sufficient probable cause to issue an administrative warrant authorizing an inspection of a vessel for purposes of evaluating compliance with the Toxic Substances Control Act (TSCA). The court explained that evidence of the presence of substances regulated under the statute provided sufficient probable cause to justify a search intended to evaluate compliance with the statute at issue. As explained by the Fourth Circuit:

> The district court issued the warrant because there was probable cause to believe that PCBs [(polychlorinated biphenyls)] were present on the Sanctuary [vessel], rendering it proper for EPA to conduct an inspection to determine whether TSCA's requirements were being met. EPA thus obtained the warrant pursuant to its statutory authority to administer TSCA.

---

[6] "Treatment" may have occurred because the baghouse dust was mixed with non-hazardous wastes prior to offsite shipment for disposal. See Section 1004(34) of RCRA, 42 U.S.C. § 6903(34) (definition of "treatment").

*M/V Sanctuary*, 540 F.3d at 301. In the instant matter, the witness-statements described above, together with the admissions made by SF&E in response to U.S. EPA's request for information, support a finding of probable cause to believe that RCRA-regulated hazardous waste in the form of baghouse dust is present at the SF&E facility. In addition, SF&E's response to the U.S. EPA's information request admits that the Kolene sludge generated at the facility is a hazardous waste, and that filter press waste is routinely mixed with the Kolene sludge, with the resulting mixture being identified and handled as hazardous waste (waste code D007 – chromium toxicity characteristic). Therefore, U.S. EPA has a reasonable suspicion that violations of RCRA may be ongoing at the SF&E facility, and that evidence of current and past violations may be present at the facility; hence, it is proper for U.S. EPA to conduct an inspection to determine whether the requirements of RCRA and its implementing regulations are being met with respect to those three wastes.

As EPA has information about specific conditions and practices at the SF&E facility which, if confirmed, would constitute violations of RCRA and its implementing regulations, the appropriate relief is to issue an administrative warrant that allows the Agency access to the facility for purposes of conducting a compliance-evaluation inspection, including the collection of samples of suspected hazardous wastes. The statements of the two former SF&E employees summarized in the sworn Affidavit of EPA Environmental Engineer Brenda Whitney, supplemented by the information provided by the WDNR, are sufficient to establish reasonable grounds to believe that violations of RCRA may have been committed at the SF&E facility, and that such violations may be ongoing. This is sufficient to establish probable cause in support of the requested administrative warrant.[7]

---

[7] *See Burkart Randall Division of Textron*, 625 F.2d at 1319-20 (7th Cir. 1980) (upholding issuance of administrative warrant for OSHA inspection, where "the only information before the Magistrate ... was

B. <u>Investigative Activities for which a Warrant is Requested</u>

Based on the information set forth in the WDNR interview reports, and summarized in the sworn Affidavit of Environmental Engineer Brenda Whitney, U.S. EPA intends to perform the following investigative activities:

1. Collecting samples of baghouse dust from the baghouses, in particular the baghouse which witnesses identified as collecting dust from grinding or blasting operations.

2. Collecting samples of Kolene sludge (identified as a hazardous waste by SF&E).

3. Collecting samples of "filter cake," or the solids removed from the Kolene process's rinse water (which is sent through an indexing fabric filter where solids are removed prior to discharge to the sanitary sewer). SF&E explained in its response to the information request that these solids are mixed with the Kolene sludge, and the entire mass handled and disposed of as hazardous waste (D007 – chromium toxicity characteristic).

4. Conducting a full process-based RCRA inspection, which is U.S. EPA's standard procedure when inspecting a facility for compliance with RCRA regulations. This inspection will take place concurrently with the sampling event (there will be two teams of inspectors). During this inspection, U.S. EPA personnel will interview facility representatives and review records in order to acquire information regarding the facility's processes that produce solid wastes.

5. Taking photographs.

6. Collection/copying of records relating to the generation, treatment, storage, disposal, shipment or other handling of hazardous wastes at the SF&E facility.

7. In addition, because the WDNR report of Warden Dieckhoff's interview of a former SF&E employee (referred to in the Affidavit of Brenda Whitney as "Former Employee X") indicates that the baghouses which were supposed to collect dust generated from grinding operations were frequently ripped and in a state of disrepair,[8] U.S. EPA has a reasonable basis to believe that baghouse dust hazardous waste may have been released

---

the sworn warrant application submitted by the OSHA compliance officer." Court held that, because "the [warrant] application stated that OSHA had received complaints from two employees of Burkart," because it "described the specific unsafe and unhealthful working conditions alleged in the complaints and noted that the complaints asserted that these conditions posed a threat of serious physical harm to Burkart's employees," and because "[t]he application then stated that OSHA had determined from this information, that reasonable grounds existed to believe that violations of the Act or regulations issued thereunder would be found on Burkart's premises," the information contained in the warrant application was sufficiently detailed to establish "the requisite degree of probable cause.").

[8] See *Affidavit of Brenda Whitney*, Par. 25.f., Par. 26.b. – 26.f.

onto the floors and outdoor areas of the SF&E facility. For this reason, U.S. EPA intends use both visual observation and an X-Ray Fluorescence (XRF) device to determine whether baghouse dust has contaminated the surrounding grounds and soils of the SF&E property, and to collect samples in areas where visual observations or XRF readings indicate potential contamination with hazardous wastes.

Each of these investigative activities is within the scope of authority granted by Section 3007(a) of RCRA, 42 U.S.C. § 6927(a).

### Requested Relief

WHEREFORE, U.S. EPA requests that this Court issue an administrative search warrant allowing U.S. EPA's authorized representatives, as well as authorized representatives of the Wisconsin Department of Natural Resources, to enter, inspect and collect samples of suspected hazardous waste from the SF&E facility located at 5150 N. 35th Street, Milwaukee, Milwaukee County, Wisconsin, on the dates of May 17, 18 and 19, 2023, in accordance with Section 3007(a) of RCRA 42 U.S.C. § 6927(a).

Dated at Milwaukee, Wisconsin, this 17th day of May 2023.

GREGORY J. HAANSTAD
United States Attorney

By:     *s/ Chris Larsen*

CHRIS R. LARSEN
Assistant United States Attorney
Wisconsin State Bar No. 1005336
Office of the United States Attorney
Federal Building, Room 530
517 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
Chris.Larsen@usdoj.gov